# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, ) ) ) ) Plaintiff, ) ) v. ) ) FOUNDATION MEDICINE, INC., ) MICHAEL J. PELLINI, ALEXIS BORISY, ) TROY COX, MICHAEL R. DOUGHERTY, ) SANDRA HORNING, EVAN JONES, ) DANIEL O'DAY, MICHAEL D. VARNEY, ) KRISHNA YESHWANT, ROCHE ) HOLDINGS, INC., and 062018 MERGER ) SUBSIDIARY, ) ) Defendants. ) | Case No. _____ JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on June 19, 2018 (the "Proposed Transaction"), pursuant to which Foundation Medicine, Inc. ("Foundation Medicine" or the "Company") will be acquired by Roche Holdings, Inc. ("Parent") and 062018 Merger Subsidiary, Inc. ("Merger Sub," and collectively with Parent, "Roche").

2. On June 18, 2018, Foundation Medicine's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Roche. Pursuant to the terms of the Merger Agreement, Roche commenced a tender offer, set to expire on July 30, 2018. If the Proposed Transaction is

consummated, Foundation Medicine stockholders will receive $137.00 in cash for each share of Foundation Medicine.

3. On July 2, 2018, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Foundation Medicine common stock.

9. Defendant Foundation Medicine is a Delaware corporation and maintains its

principal executive offices at 150 Second Street, Cambridge, Massachusetts 02141. Foundation Medicine's common stock is traded on the NasdaqGS under the ticker symbol "FMI."

10. Defendant Michael J. Pellini ("Pellini") is Chairman of the Board of Directors of Foundation Medicine.

11. Defendant Alexis Borisy ("Borisy") is a director of Foundation Medicine.

12. Defendant Troy Cox ("Cox") is President, Chief Executive Officer ("CEO"), and a director of Foundation Medicine.

13. Defendant Michael R. Dougherty ("Dougherty") is a director of Foundation Medicine.

14. Defendant Sandra Horning ("Horning") is a director of Foundation Medicine. Horning was designated to the Board by Roche. Horning currently serves as global head, product development and chief medical officer for Roche.

15. Defendant Evan Jones ("Jones") is a director of Foundation Medicine.

16. Defendant Daniel O'Day ("O'Day") is a director of Foundation Medicine. O'Day was designated to the Board by Roche. O'Day has served as CEO of Roche Pharmaceuticals since September 2012 and is a member of the Roche corporate executive committee.

17. Defendant Michael D. Varney ("Varney") is a director of Foundation Medicine. Varney was designated to the Board by Roche.

18. Defendant Krishna Yeshwant ("Yeshwant") is a director of Foundation Medicine.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Parent is a Delaware corporation and a party to the Merger Agreement. As of June 18, 2018, Parent and its affiliates collectively beneficially owned 21,019,111 shares of

the Company's outstanding common stock, representing approximately 56.64% of the outstanding shares.

21. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## **CLASS ACTION ALLEGATIONS**

22. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Foundation Medicine (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of June 18, 2018, there were approximately 37,113,008 shares of Foundation Medicine common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would

create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

### SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29. Foundation Medicine is a molecular information company dedicated to a transformation in cancer care in which treatment is informed by a deep understanding of the genomic changes that contribute to each patient's unique cancer.

30. The Company offers a full suite of comprehensive genomic profiling assays to identify the molecular alterations in a patient's cancer and match them with relevant targeted therapies, immunotherapies and clinical trials.

31. Foundation Medicine's molecular information platform aims to improve day-to-day care for patients by serving the needs of clinicians, academic researchers, and drug developers to help advance the science of molecular medicine in cancer.

32. On June 18, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with Roche.[1]

33. Pursuant to the terms of the Merger Agreement, Roche commenced a tender offer,

---

[1] As of June 18, 2018, Parent and its affiliates collectively beneficially owned 21,019,111 shares of the Company's outstanding common stock, representing approximately 56.64% of the outstanding shares.

set to expire on July 30, 2018.

34. If the Proposed Transaction is consummated, Foundation Medicine stockholders will receive $137.00 in cash for each share of Foundation Medicine.

35. According to the press release announcing the Proposed Transaction:

Roche (SIX: RO, ROG; OTCQX: RHHBY) and Foundation Medicine, Inc. (NASDAQ: FMI) today announced they have entered into a definitive merger agreement for Roche to acquire the outstanding shares of FMI's common stock not already owned by Roche and its affiliates at a price of US$ 137.00 per share in cash. This corresponds to a total transaction value of US$ 2.4 billion on a fully diluted basis, and a total company value of US$ 5.3 billion on a fully diluted basis. This price represents a premium of 29% to FMI's closing price on 18 June 2018 and a premium of 47% and 68% to FMI's 30-day and 90-day volume weighted average share price on 18 June 2018, respectively. The merger agreement has been unanimously approved by the board of Roche and a Special Committee of the independent directors of FMI and by its full board of directors with the Roche designated directors abstaining from the deliberations and vote. All current members of the FMI board have indicated that they intend to tender their FMI shares in the tender offer. . . .

Foundation Medicine, based in Cambridge, Massachusetts, is a market leading molecular information company dedicated to a transformation in cancer care, where each patient's treatment is informed by a deep understanding of the molecular changes that contribute to their disease. Their services include a full suite of comprehensive genomic profiling (CGP) assays to identify the molecular alterations in a patient's cancer and match them with relevant targeted therapies, immunotherapies and clinical trials. . . .

Terms of the agreement
Under the terms of the merger agreement, Roche will promptly commence a tender offer to acquire all of the outstanding shares of FMI's common stock not already owned by Roche at a price of US$ 137.00 per share in cash. The closing of the tender offer will be subject to a majority of FMI's outstanding shares not already held by Roche being tendered in the tender offer. In addition, the transaction is subject to other customary closing conditions.

Following completion of the tender offer, Roche will acquire all remaining shares at the same price of US$ 137.00 per share through a second step merger. The closing of the transaction is expected to take place in the second half of 2018.

36. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to

6

communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Section 7.03(a) of the Merger Agreement provides:

> (a) General Prohibitions. Prior to the Acceptance Time, neither the Company nor any of its Subsidiaries shall, nor shall the Company or any of its Subsidiaries authorize or permit any of its or their officers, directors, employees, investment bankers, attorneys, accountants, consultants or other agents or advisors ("Representatives") to, directly or indirectly: (i) solicit, initiate or take any action to knowingly assist, facilitate or encourage the submission of any Acquisition Proposal; (ii) enter into or participate in any discussions or negotiations with, furnish any information relating to the Company or any of its Subsidiaries or afford access to the business, properties, assets, books or records of the Company or any of its Subsidiaries to, otherwise cooperate with, or knowingly assist, participate in or encourage any effort by any Third Party that has made, is seeking to make or would be reasonably expected to make an Acquisition Proposal; (iii) fail to make, withdraw or modify in a manner adverse to Parent or Merger Subsidiary the Company Board Recommendation (or recommend an Acquisition Proposal or make any public statement (or statement to any of its stockholders (other than, for the avoidance of doubt, to a director of the Company in his capacity as such)) inconsistent with the Company Board Recommendation (including publicly proposing to withdraw or modify the Company Board Recommendation)) (any of the foregoing in this clause (iii), an "Adverse Recommendation Change"); (iv) fail to enforce, or grant any waiver or release under, any standstill or similar agreement with respect to any class of equity securities of the Company or any of its Subsidiaries; (v) approve any transaction under, or any Person becoming an "interested stockholder" under, Section 203 of Delaware Law; or (vi) enter into any agreement in principle, letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or other similar instrument relating to an Acquisition Proposal. It is agreed that any violation of the restrictions on the Company set forth in this Section 7.03 by any Representative of the Company or any of its Subsidiaries shall be a breach of this Section 7.03(a) by the Company.

37. Additionally, the Company must promptly advise Roche of any proposals or inquiries received from other parties. Section 7.03(c) of the Merger Agreement provides:

> (c) Required Notices. None of the Company Board (or the Special Committee), the Company, any Subsidiaries of the Company or any of their respective Representatives shall take any of the actions referred to in Section 7.03(b) unless the Company shall have delivered to Parent a prior written notice advising Parent that it intends to take such action, and, after taking any such action, the Company shall continue to advise Parent on a reasonably current basis of the status and material terms of any discussions and negotiations with the Third Party. In addition, the Company shall notify Parent promptly (but in no event later than 24 hours) after receipt by the Company (or any of its Representatives) of any Acquisition Proposal,

any indication that a Third Party is considering making an Acquisition Proposal or any request for information relating to the Company or any of its Subsidiaries or for access to the business, properties, assets, books or records of the Company or any of its Subsidiaries by any Third Party that has made, is seeking to make or would reasonably be expected to make an Acquisition Proposal. The Company shall provide such notice orally and in writing and shall identify the Third Party making, and the material terms and conditions of, any such Acquisition Proposal, indication or request. The Company shall keep Parent reasonably informed, on a reasonably current basis, of the status and material terms of any such Acquisition Proposal, indication or request, and shall promptly (but in no event later than 24 hours after receipt) provide to Parent copies of all correspondence and written materials sent or provided to the Company or any of its Subsidiaries that describes any material terms or conditions of any Acquisition Proposal (as well as written summaries of any material oral communications addressing such matters). Any material amendment to any Acquisition Proposal will be deemed to be a new Acquisition Proposal for purposes of the Company's compliance with this Section 7.03(c).

38. Moreover, the Merger Agreement contains a "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Roche a "matching right" with respect to any "Superior Proposal" made to the Company. Section 7.03(d) of the Merger Agreement provides:

(d) "Last Look." Further, the Company Board (or the Special Committee) shall not make an Adverse Recommendation Change pursuant to Section 7.03(b), unless: (i) the Company promptly provides written notice to Parent at least four Business Days before taking such action of its intention to do so (such four Business Day period, the "Negotiation Period"), (ii) (A) in the case of an Adverse Recommendation Change to be made following receipt of a Superior Proposal, such notice specifies in reasonable detail the basis for the Adverse Recommendation Change and attaches the most current version of the proposed agreement under which such Superior Proposal is proposed to be consummated and the identity of the Third Party making the Superior Proposal or (B) in the case of an Adverse Recommendation Change to be made in response to an Intervening Event pursuant to Section 7.03(b)(ii), such notice includes a reasonably detailed description of the underlying facts giving rise to, and the reasons for taking, such Adverse Recommendation Change and during the Negotiation Period, to the extent Parent wishes to negotiate, the Company negotiates, and causes its Representatives to negotiate, in good faith with Parent or and its Representatives with respect to any proposed changes by Parent to the terms and conditions of this Agreement or the transactions contemplated hereby (or with respect to other proposals made by Parent) and (iii) Parent does not make, prior to 11:59 p.m., New York City time, on the final day of the Negotiation Period, an offer that (A) in the case of an

Adverse Recommendation Change to be made following receipt of a Superior Proposal pursuant to Section 7.03(b), is at least as favorable to the stockholders of the Company (other than Roche Holding Ltd and its Affiliates) as such Superior Proposal (it being understood and agreed that any amendment to the financial terms or other material terms of such Acquisition Proposal shall require a new written notification from the Company and a new three-Business Day period under this Section 7.03(d), which shall also be deemed to be a "Negotiation Period" under this Section 7.03(d)) or (B) in the case of an Adverse Recommendation Change to be made in response to an Intervening Event pursuant to Section 7.03(b)(i), eliminates the basis for such Adverse Recommendation Change under Section 7.03(b).

39. The Merger Agreement also provides for a "termination fee" of to $34.5 million payable by the Company to Roche if the Individual Defendants cause the Company to terminate the Merger Agreement.

*The Solicitation Statement Omits Material Information, Rendering It False and Misleading*

40. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

41. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

42. The Solicitation Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

43. Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications. However, among other things, the Solicitation Statement states that, "upon completion of the Merger, the officers of Foundation Medicine at the Effective Time will be the officers of the surviving corporation in the Merger[.]"

44. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that

9

information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45. The Solicitation Statement also omits material information regarding potential conflicts of interest of the financial advisor to the special committee of the Board, Goldman Sachs & Co. LLC ("Goldman Sachs").

46. The Solicitation Statement provides that "Goldman Sachs was considered for the potential engagement due to that firm's qualifications, industry experience, and familiarity with [the] company as a result of its role in [the] initial public offering and as advisor to [the] Board in connection with Roche Holdings' investment in 2015." However, the Solicitation Statement fails to disclose the amount of compensation Goldman Sachs received for providing such services.

47. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

49. The above referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made,

10

in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

52. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

53. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

54. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

55. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

56. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

57. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

58. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

59. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

60. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

61. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

63. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

64. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

65. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

66. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

67. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

**(Claim for Violation of Section 20(a) of the 1934 Act  
Against the Individual Defendants and Roche)**

68. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69. The Individual Defendants and Roche acted as controlling persons of Foundation Medicine within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as directors of Foundation Medicine and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

70. Each of the Individual Defendants and Roche was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

72. Roche also had direct supervisory control over the composition of the Solicitation

Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

73. By virtue of the foregoing, the Individual Defendants and Roche violated Section 20(a) of the 1934 Act.

74. As set forth above, the Individual Defendants and Roche had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

75. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

76. Plaintiff and the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for

plaintiff's attorneys' and experts' fees; and

F.	Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: July 11, 2018

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*